Carlos Reyes Gonzales
















IN THE
TENTH COURT OF APPEALS
 

No. 10-98-003-CR

     CARLOS REYES GONZALES,
                                                                              Appellant
     v.

     THE STATE OF TEXAS,
                                                                              Appellee
 

From the 54th District Court
McLennan County, Texas
Trial Court # 96-683-C
                                                                                                               

O P I N I O N
                                                                                                               

      A jury convicted Carlos Gonzales of capital murder. Tex. Pen. Code Ann. § 19.03 (Vernon
1994). The State did not seek the death penalty, and Gonzales was automatically sentenced to life
imprisonment. Id. § 12.31 (Vernon 1994); Tex. Code Crim. Proc. Ann. art. 37.071, § 1
(Vernon Supp. 1999). He appeals on eight issues, complaining of charge error and constitutional
violations. We will affirm the judgment.
 
 
BACKGROUND
      Gonzales was indicted for intentionally causing the deaths of two individuals, Johnny Vela
and Pedro Ybarra. The shooting occurred in Vela's Bar on July 20, 1996. 
      Prior to the shooting, on the night of July 17, Gonzales' adopted son, Michael, had gone to
Vela's Bar with his girlfriend and another friend. An altercation ensued between Michael, Vela,
and Ybarra. After Michael was injured in the fight, he left the bar and went to his father's home. 
Gonzales, a long-term chronic alcoholic, testified that he “went into shock” when he saw
Michael's appearance. He said that he began to drink heavily and continued to do so through the
day of the shooting. 
      The afternoon after the fight, Gonzales went to Vela's Bar to retrieve Michael's eye glasses. 
Alovio Vela, father of one of the victims, testified that Gonzales wanted to know what had
happened to his son. He testified that Gonzales said, “I will take care of this matter myself. I will
take care of you, Johnny and Pete.” Gonzales denied making these statements.
      On July 20, Gonzales went into Vela's Bar around 9:30 or 10 p.m. He ordered a beer from
Johnny Vela, who was working behind the counter. Gonzales drank the beer, then he pulled a gun
and shot Ybarra in the back and Vela in the abdomen. Witnesses testified that Gonzales, still
holding the gun, backed out of the bar and drove away. The police found him at his home, where
the weapon was later recovered from the rain gutter.



      Gonzales testified that he had no recollection of going into Vela's Bar the night of the offense
or of shooting Vela and Ybarra. Dr. Daniel Price, a psychologist, testified about Gonzales'
chronic alcoholism and the effect of “alcoholic blackouts.” 
ISSUES
      We turn to the eight issues Gonzales presents.
lesser included offenses and jury instructions
      In issue one, Gonzales complains that the court erred in failing to charge the jury on the lesser
included offenses of murder, manslaughter, and criminally negligent homicide. In issues two and
three, he complains that the court erred in failing to charge the jury with the definitions of
“recklessly” and “criminal negligence.” Issues two and three have merit only if a charge on a
lesser offense involving either definition should have been submitted.
      In determining whether a jury must be instructed concerning a lesser included offense, a two-step analysis must be applied. Rousseau v. State, 855 S.W.2d 666, 672-73 (Tex. Crim. App.
1993). First, the lesser included offense must be included within the proof necessary to establish
the offense charged. Id. at 672. Second, there must be some evidence in the record that would
permit a jury rationally to find that if the defendant is guilty, he is guilty of only the lesser offense. 
Id. (clarifying the test of Royster v. State, 622 S.W.2d 442, 446 (Tex. Crim. App. 1981)). The
second prong of the test preserves the integrity of the jury as the factfinder by ensuring that the
jury is instructed as to a lesser included offense only when that offense constitutes a valid, rational
alternative to the charged offense. Arevalo v. State, 943 S.W.2d 887, 889 (Tex. Crim. App.
1997). If a jury were instructed on a lesser included offense even though the evidence did not
raise it, the instruction "would constitute an invitation to the jury to return a compromise or
otherwise unwarranted verdict." Id.
      Gonzales argues that the intense stress he felt in reaction to his son's injuries raises a question
of whether he intended to kill Vela and Ybarra. When asked whether he remembered going into
the bar with the intent to kill the men, Gonzales testified that he “never had any kind of
intentions.” He testified that he did not remember the events that took place in the bar. Dr. Price
testified that it was “possible” that Gonzales went into the bar with the intent to harm the men but
not to kill them. Gonzales argues that this is some evidence of a lesser mental state and thus raises
the issue of a lesser offense than capital murder.
      The State argues that although murder, involuntary manslaughter and criminally negligent
homicide are lesser included offenses of capital murder, a defendant is not entitled to an instruction
on the lesser included offense unless there is evidence that, if Gonzales was guilty, he was guilty
only of the lesser included offense. Rousseau, 855 S.W.2d at 672-73. Thus, for an instruction
on murder, there must be evidence that Gonzales intended to cause serious bodily injury and did
not intend to kill either victim. Tex. Pen. Code Ann. § 19.02(b)(2) (Vernon 1994). An
instruction on manslaughter would require evidence that he was aware of, but consciously
disregarded, a substantial and unjustifiable risk that the result would occur. Id. §§ 6.03(c), 19.04
(Vernon 1994). Finally, an instruction on criminally negligent homicide would require evidence
that Gonzales ought to have been aware of a substantial and unjustifiable risk created by his
conduct. Id. §§ 6.03(d), 19.05 (Vernon 1994). There must also be some evidence showing that
Gonzales was unaware of the risk. Id. § 6.03(d); Mendieta v. State, 706 S.W.2d 651, 653 (Tex.
Crim. App. 1986). 
      The State responds that Gonzales' inability to recall his actions because of his alcoholism is
no evidence that he did not intend to kill. Furthermore, the State characterizes Gonzales' reliance
on his chronic alcoholism as an attempt to circumvent section 8.04 of the Penal Code which states:
“Voluntary intoxication does not constitute a defense to the commission of a crime.” Tex. Pen.
Code Ann. § 8.04 (Vernon 1994).
      The State argues that Dr. Price's testimony was merely hypothetical and did not tend to prove
Gonzales' actual state of mind the night of the shooting. Dr. Price also testified that alcoholic
blackouts do not mean that the alcoholic did not act with deliberation; rather, the alcoholic simply
cannot remember his actions. He said that blackouts do not preclude a conscious awareness of
one's actions and that nothing about alcoholism would have precluded Gonzales from knowing that
he was aiming and shooting the gun.
       The State also points to evidence showing Gonzales acted intentionally. He went to the bar
the day after the shooting saying he was going to “take care of the matter.” The night of the
shooting, he ordered a beer from Vela and stayed at the counter for 15 to 20 minutes. He pulled
the gun, shot Ybarra in the back, and then shot Vela in the abdomen. He backed out of the bar,
still holding the gun. Gonzales returned home and hid the gun in the rain gutter. The gun had
been wiped with oil, making the recovery of fingerprints impossible. The autopsies revealed that
he had used hollow point bullets, which expand when they enter the body and cause a “larger
wound track.” 
      We do not find evidence which would have permitted a jury rationally to find that if Gonzales
was guilty, he was guilty of only one of the lesser offenses. Rousseau, 855 S.W.2d at 672-73. 
Thus, the court did not err in failing to instruct on the lesser included offenses. We overrule issue
one and, having done so, also overrule issues two and three.
sudden passion
      In issues four through six, Gonzales raises constitutional challenges to the capital murder
statute. See Tex. Pen. Code Ann. § 19.03. He says that, as it presently exists, the statute
constitutes cruel and unusual punishment, denies him due process, and has a chilling effect on his
right to counsel. His seventh issue asserts that the court erred in failing to instruct the jury on
“sudden passion.”
      “Sudden passion” arising from “adequate cause” is no longer a question for the guilt-innocence stage of trial in a murder case. Id. § 19.02(d). Sudden passion may be raised at the
punishment phase to reduce a first-degree murder charge to a second-degree felony. Id. As
applied in the capital felony sentencing context, the jury is never presented with the question of
sudden passion. Tex. Code Crim. Proc. Ann. art. 37.017, § 1. In a capital murder case in
which the State does not seek the death penalty, the judge “shall sentence the defendant to life
imprisonment” upon a finding of guilt. Id. 
      Gonzales concedes that this Court has recently determined these issues adversely to his
position. In Buhl v. State, 960 S.W.2d 927 (Tex. App.—Waco 1998, pet. ref'd), we held that
the mandatory life sentence does not constitute cruel and unusual punishment within the meaning
of the Eighth Amendment and does not violate a defendant's right to due process. Id. at 935. 
We believe our analysis was correct in Buhl and apply it again. We do not find that the capital
murder sentencing scheme constitutes cruel and unusual punishment or that Gonzales was denied
due process. Id. We overrule issues four and five.
      Issue six asserts that the capital punishment scheme unconstitutionally chills a defendant's
ability to present relevant mitigating evidence to the jury and thus denies him effective assistance
of counsel. Ineffective assistance occurs when trial counsel's performance was so deficient that
the defendant was deprived of a fair trial. See Strickland v. Washington, 466 U.S. 668, 690, 104
S.Ct. 2052, 2066, 80 L.Ed.2d 674 (1984); Stafford v. State, 813 S.W.2d 503, 505-06 (Tex. Crim.
App. 1991). There is no suggestion here that trial counsel's performance was deficient. We
overrule issue six.
      Issue seven, regarding a “sudden passion” jury instruction, is dependent on our finding error
in issues four or five. Because we have overruled issues four and five, we likewise overrule issue
seven.
voluntary intoxication
      In issue eight, Gonzales complains that the court commented on the weight of the evidence
by including an instruction in the charge that “voluntary intoxication does not constitute a defense
to the commission of a crime.” Gonzales objected to the instruction.
      Both Gonzales and the State agree that the court may not express an opinion on the weight of
the evidence. Tex. Code Crim. Proc. Ann. art. 36.14 (Vernon Supp. 1999). Gonzales argues
that there was no evidence that he was intoxicated at the time of the offense and thus the
instruction is a comment on the evidence. 
      The State argues that the court must instruct the jury on the law applicable to the case. Id.;
Taylor v. State, 885 S.W.2d 154, 157 (Tex. Crim. App. 1994). Gonzales testified that he began
drinking heavily after seeing his son's injuries on July 17 and that he continued drinking the day
of the offense.


 The last thing Gonzales remembered about that night was buying beer at a store
for the second time that day. Witnesses in the bar testified that he ordered and drank a beer just
before the shooting. Gonzales testified that he had alcoholic blackouts. Dr. Price testified
extensively about alcoholism and its effects on Gonzales. He testified that, because of their high
tolerance, alcoholics can appear to not be intoxicated. Price also testified about alcoholic
blackouts.
      The court's instruction tracks the language of section 8.04 of the Penal Code. Tex. Pen.
Code Ann. § 8.04. Given the evidence that Gonzales consumed alcoholic beverages right up to
the time he shot the victims, the court did not err in instructing the jury on voluntary intoxication. 
We overrule issue eight.
      We affirm the judgment.
 
                                                                       BILL VANCE
                                                                       Justice

Before Justice Davis,
          Justice Cummings, and
          Justice Vance
(Justice Cummings not participating)
Affirmed
Opinion delivered and filed March 3, 1999
Do not publish