Valerie Susan TAYLOR, Appellant,

v.

The STATE of Texas, Appellee.

No. 816–93.

Court of Criminal Appeals of Texas,
En Banc.

Oct. 19, 1994.

Terri Tipton Holder, court appointed on appeal, Angleton, for appellant.

Jim Mapel, Dist. Atty., Mary Peter Cudd, Asst. Dist. Atty., Angleton, and Robert Huttash, State's Atty., Austin, for the State.

*OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW*

MALONEY, Judge.

Appellant was indicted for murder and pled not guilty by reason of insanity. A jury convicted appellant and assessed life imprisonment. The First Court of Appeals affirmed. *Taylor v. State*, 856 S.W.2d 459 (Tex.App.—Houston [1st Dist.] 1993). We granted appellant's petition for discretionary review to determine whether the Court of Appeals erred in holding that an intoxication

instruction was properly given at the guilt/innocence stage of trial.[1]

The Court of Appeals' opinion sets forth in detail the facts leading to the instant offense and the testimony at trial. *Id.* at 462–67. Briefly, appellant killed her four-year old daughter, confessed to committing the act, but pled not guilty by reason of insanity. At trial, evidence was admitted that appellant suffered from paranoid schizophrenia and had exhibited psychotic behavior in the weeks before the offense. There was evidence that appellant shared a marihuana cigarette with her common-law husband the night of the offense,[2] and that the use of marihuana could trigger a psychotic episode. The State maintained that although appellant was undoubtedly mentally disturbed, she knew the difference between right and wrong at the time of the offense. Alternatively, the State argued that if appellant did not know right from wrong at the time of the offense, it was because of her use of marihuana.

The trial court instructed the jury at guilt/innocence on the affirmative defense of insanity. The court also instructed the jury as follows:

Voluntary intoxication does not constitute a defense to the commission of a crime.

For the purpose of this section "intoxication" means disturbance of mental or physical capacity resulting from the introduction of any substance into the body.

Appellant objected to the instruction on intoxication "in that it does not come under the guidelines of Section 8.04 of the Penal Code. And we are not raising any defensive issues that would go to that particular instruction."

The Court of Appeals upheld the instruction, concluding that

there was [ ] evidence "which might have lead" the jury to believe that appellant was intoxicated at the time of the offense, and that such intoxication "might have contributed" to appellant's claimed insanity. Therefore, the trial court did not err by instructing the jury on intoxication.

*Id.* at 472 (following *Jaynes v. State,* 673 S.W.2d 198 (Tex.Crim.App.1984) and *Williams v. State,* 567 S.W.2d 507 (Tex.Crim. App.1978)).

Appellant argues that the instruction objected to was improperly given because she asserted a defense of insanity, not "temporary insanity" caused by her use of marihuana, and that the evidence was insufficient to show that she was "intoxicated." The State contends the instruction was adequately supported by the evidence.

## I.

At one time Texas courts considered evidence of intoxication as being relevant to the defendant's state of mind at the time of the offense. *See generally Evers v. State,* 31 Tex.Crim. 318, 20 S.W. 744, 746–47 (App. 1892) (discussing history of caselaw on issue of intoxication as excuse to committing crime). The theory was

... that drunkenness ought to be admitted in evidence, not to excuse, justify, or mitigate the crime, but simply to throw light upon the mental *status* of the offender, to enable the jury to find out what crime had been committed; or rather, by proving the absence of the necessary constituents of the crime (such as malice, premeditation, intent, etc.,) to show that no crime was committed.

*Id.* 20 S.W. at 746 (emphasis in original). Reportedly, following a trial in which a defendant who committed murder "without

---

1. Specifically, we granted review of the following two grounds: (1) The First Court of Appeals erred in holding that the intoxication charge was properly given at the guilt stage of trial when temporary insanity was not a defense and when appellant did not claim that intoxication excused her actions, in direct conflict with its earlier ruling on that issue; and (2) The Court of Appeals erred in using the § 8.04(c) standard to determine if the evidence of intoxication was sufficient to submit a charge at the guilt stage of trial as opposed to the standard set out by this Court that the charge must be supported by the evidence.

2. Appellant testified that she "took two hits off of" a marihuana cigarette and then put it out since her common-law husband did not want to share it and she did not wish to smoke it alone. Appellant's common-law husband testified that he smoked the cigarette and appellant had "a little bit" of it.

provocation" was acquitted "on the ground of temporary insanity caused by drunkenness," the Legislature enacted Penal Code article 36, the predecessor to section 8.04.[3] *Id.* (discussing, but not citing, the celebrated case which gave rise to enactment of article 36).

The principles set forth in article 36 remain embodied in section 8.04, which was codified as part of the 1974 Penal Code. *See Ramos v. State*, 547 S.W.2d 33, 34 n. 2 (Tex. Crim.App.1977) (section 8.04 "quite clearly" a recodification of article 36). Section 8.04, *Intoxication*, states:

(a) Voluntary intoxication does not constitute a defense to the commission of crime.

(b) Evidence of temporary insanity caused by intoxication may be introduced by the actor in mitigation of the penalty attached to the offense for which he is being tried.

(c) When temporary insanity is relied upon as a defense and the evidence tends to show that such insanity was caused by intoxication, the court shall charge the jury in accordance with the provisions of this section.

(d) For purposes of this section "intoxication" means disturbance of mental or physical capacity resulting from the introduction of any substance into the body.

Subsection (a) of section 8.04 is directed to the guilt/innocence phase of trial (per use of the word "defense"),[4] essentially providing that voluntary intoxication will not excuse a defendant's actions. Subsection (b) is a punishment provision, specifically providing that a defendant may introduce evidence of temporary insanity caused by intoxication for purposes of mitigating his punishment.

■ Subsection (c) is a "charge" provision, designating circumstances in which a jury instruction must be given. We interpret subsection (c) as setting forth only *certain* circumstances in which a trial court must give an instruction. Subsection (c) does not *preclude* the giving of an instruction if circumstances, different than those outlined in subsection (c), otherwise raise an issue under either subsection (a) or (b). This view is consistent with the application of former article 36. Similar to subsection (c), article 36 provided that "where temporary insanity is relied upon as a defense and the evidence tends to show that such insanity was brought about by the immoderate use of intoxicating liquors" the court was required to "charge the jury in accordance with the provisions of section 1." *See* fn. 3, supra. Section 1 was the substantive equivalent of subsections (a)

---

**3.** As enacted, article 36 provided in part:

Section 1. ... That neither intoxication, nor temporary insanity of mind, produced by the voluntary recent use of ardent spirits, shall constitute any excuse in this State for the commission of crime, nor shall intoxication mitigate either the degree or the penalty of crime, but evidence of temporary insanity produced by such use of ardent spirits may be introduced by the defendant in any criminal prosecution in mitigation of the penalty attached to the offense for which he is being tried....

Sec. [sic] 2. It shall be the duty of the several district and county judges of this State, in any criminal prosecution pending before them, where temporary insanity is relied upon as a defense and the evidence tends to show that such insanity was brought about by the immoderate use of intoxicating liquors, to charge the jury in accordance with the provisions of section 1 of this act.

Act of February 17, 1881, 17th Leg., ch. 14, Tex.Gen.Laws 9.

**4.** Both appellant and the Court of Appeals state that an instruction under section 8.04 is only proper at punishment, although an instruction at guilt/innocence is not reversible error. This view

of section 8.04 as primarily a "mitigation" provision is misguided. While certainly subsection (b) is a mitigation provision, subsection (a) is not. *Evers* made clear that article 36 was passed in part to prevent defendants from relying on intoxication as an excuse for criminal responsibility. Undoubtedly, then, it was directed in part at issues pertaining to the defendant's guilt:

By its terms there were two purposes clearly intended: *First,* to eliminate mere intoxication as any defense in any criminal prosecution whatever, regardless of the constituent elements of the crime; *second,* to prevent temporary insanity [sic] from being a defense to any crime, but permitting it to be introduced ... in all criminal prosecutions to mitigate or lessen the penalty. The object of the statute was to prevent parties from pleading their own wrong, after voluntarily placing themselves under the influence of drink, and becoming a terror to the community, or a menace to other citizens.... The underlying principle of the statute is that laid down by common-law writers, to wit, that a sane man, who voluntarily puts himself in such a condition as to have no control over his will or actions, must be held to intend the consequences springing therefrom. *Evers,* 20 S.W. at 746.

and (b) combined. Nevertheless, we upheld instructions on Section 1, even when there was no evidence of temporary insanity, or evidence that temporary insanity was produced by intoxication. *See, e.g., Valdez v. State,* 462 S.W.2d 24, 27 (Tex.Crim.App. 1970); *Kincheloe v. State,* 146 Tex.Crim. 414, 175 S.W.2d 593, 596 (App.1943); *Ramos v. State,* 141 Tex.Crim. 126, 147 S.W.2d 809, 811 (App.1941). In *Kincheloe,* the defendant's complaint was similar to appellant's complaint in the instant case—the defendant complained that the instruction given under Section 1 was prejudicial since there was no evidence of temporary insanity produced by intoxication. We said:

> The record does reflect that appellant was intoxicated at the time of the killing but not to a degree that it produced temporary insanity. Consequently, an instruction on temporary insanity from the use of ardent spirits was not required, but the instruction of the court that intoxication produced by the voluntary use of ardent spirits was not any excuse for the commission of the offense ... was not improper.

*Kincheloe,* 175 S.W.2d at 596.

■ Moreover, it is well settled that a trial court must instruct the jury on the law applicable to the case. *See, e.g.,* Tex.Code Crim. Proc.Ann. art. 36.14 (jury charge of trial judge shall "distinctly set[] forth the law applicable to the case"); *Jackson v. State,* 633 S.W.2d 897 (Tex.Crim.App.1982); *Rider v. State,* 567 S.W.2d 192, 195 (Tex.Crim.App. 1978); *Dominguez v. State,* 141 Tex.Crim. 67, 147 S.W.2d 480, 482 (App.1941). Both subsections (a) and (b) set forth rules of law that could be implicated by circumstances other than those set forth in subsection (c); if an instruction can *only* be given under subsection (c) circumstances, law applicable to the case could conceivably be kept from the jury. We do not believe that this is what the legislature intended. Were subsection (c) in-

tended to set forth exclusive circumstances in which an instruction should be given, the legislature could have explicitly stated that an instruction *may not* be given under subsections (a) or (b) *except* as provided by subsection (c).

Failing to recognize that an issue may be raised under subsection (a) by circumstances other than those set forth in subsection (c), appellant's argument turns primarily upon whether the circumstances set forth in subsection (c) have been met. Having held that subsection (c) is not controlling of whether an instruction is required under subsection (a), we will address only those portions of appellant's argument that are relevant to subsection (a).[5]

**II.**

Appellant argues that the evidence was not sufficient to raise an issue that she was intoxicated, relying upon one case from this court, *Nethery v. State,* 692 S.W.2d 686 (Tex.Crim. App.1985), *cert. denied* 474 U.S. 1110, 106 S.Ct. 897, 88 L.Ed.2d 931 (1986). In *Nethery,* a witness testified that the defendant had 3 "kamikaze" drinks and smoked a marihuana cigarette in her presence, but that he did not act or appear intoxicated. The defendant gave a written statement upon his arrest in which he stated that he "remembered drinking beer, whiskey, and vodka," smoking marihuana and "being naked and running into some water." *Id.* at 711–12. A police officer testified that of three shots made by the defendant, one was a hit and that the defendant managed physical maneuvers that were "fairly difficult to do when one is sober." We concluded that "even [the defendant's] statement, while it reflects that [the defendant] was drinking, does not necessarily show intoxication" so as to entitle him to an instruction on temporary insanity caused by intoxication.[6] *Id.* at 712. In other words, while there was evidence that the

---

5. Appellant argues that since she relied upon a defense of insanity rather than "temporary insanity" brought about by her marihuana use, the subsection (a) instruction should not have been given. While such inquiry might be relevant under subsection (c), it is not implicated under subsection (a).

6. We note that the instruction at issue in *Nethery* was a subsection (b) instruction given at punishment, requiring some evidence, not just of intoxication, but that the intoxication caused temporary insanity. However, the court did not expressly reach the issue of temporary insanity, holding that the evidence did "not necessarily show intoxication" so as to entitle the defendant

defendant in *Nethery* consumed intoxicants, there was not enough evidence of the effect of those intoxicants on the defendant's mental and physical capacity so as to require an instruction.

■ In the instant case, the Court of Appeals upheld the subsection (a) instruction based upon evidence that appellant smoked marihuana within a few hours of the offense, and that it caused her to feel and act differently and to lose control of her temper.[7] While the amount of marihuana smoked was not substantial, there was some evidence that it resulted in a "disturbance" of appellant's thoughts and actions.[8] Appellant testified that as soon as she smoked the marihuana she "started feeling funny," began "laughing and crying at the same time," felt a "sudden flash of anger" toward her daughter and told her that she was going to kill her. In addition, an expert testified that marihuana use by a schizophrenic could trigger a psychotic episode and that in his opinion appellant's marihuana usage on the night of the offense "markedly" affected her control over her temper. We hold the Court of Appeals did not err in concluding that there was some

evidence of "intoxication" sufficient to raise an issue under subsection (a).

■ Appellant also argues that the defendant must rely on her intoxication in an effort to excuse her actions before an instruction is called for. Appellant reasons that since she in no way claimed that her marihuana use caused her insanity or otherwise excused her actions, the instruction should not have been given. We disagree. Subsection (a) simply provides that intoxication is not a defense. We do not believe that a defendant needs to rely upon intoxication as a defense in order to implicate this provision. Rather, if there is evidence from any source that might lead a jury to conclude that the defendant's intoxication somehow excused his actions, an instruction is appropriate. In the instant case, where the defendant was asserting a defense of insanity in excuse of her actions, but there was also evidence, albeit slight, that her actions could have been precipitated by her marihuana use, the Court of Appeals did not err in holding that the instruction was properly given.[9]

Having held the Court of Appeals did not err in upholding the subsection (a) instruc-

"to a charge on temporary insanity caused by intoxication." *Nethery*, 692 S.W.2d at 712.

7. Specifically, the Court of Appeals relied upon the following evidence in support of its holding:

The evidence at trial indicated that appellant had used marihuana in the recent past and that it caused her to act differently. Further, the evidence showed that appellant had smoked marihuana within a few hours of killing her child. [Appellant's common-law husband] testified that shortly before killing her child, appellant was "babbling on" about going to the "other side of the moon" and being the "chosen one," and that he attributed her irrational behavior to her marihuana use on the evening of the offense. In describing the events immediately leading up to the death of her child, appellant related to the State's psychiatric expert the following:

I smoked a joint on the way home. Started feeling funny after that. Before I even got home, there's this vacant lot that scared me. Before we drove by that place, I told my daughter that I was going to kill her. It was like a sudden flash of anger towards her. There was no reason.

The State's psychiatric expert further testified that appellant's act of killing her daughter was the result of appellant losing control of her temper, and that her use of marihuana on the

night of the offense "markedly" affected her control over her temper. He concluded that appellant's use of marihuana loosened her control on her temper, which ultimately resulted in appellant killing her daughter.

In similar statements made to her own psychological expert describing the evening of the offense, appellant related that "I smoked a joint and started laughing and crying at the same time and couldn't stop." When asked whether she felt that the marihuana had anything to do with her killing her child, appellant responded as follows:

No, I've smoked marihuana a lot during my life. And I've gotten made [sic] after smoking. And the worse I'd do is maybe slap Raymond or something like that. But killing, that is a lot different than punching somebody.

*Taylor*, 856 S.W.2d at 471–72.

8. Subsection (d) of section 8.04 defines "intoxication" as "disturbance of mental or physical capacity resulting from the introduction of any substance into the body."

9. Our opinion in *Jaynes*, relied upon by the Court of Appeals, is consistent with this holding. There, *Jaynes*, 673 S.W.2d at 200, the defendant testified that she had no recollection of the events on the day of the offense. Others who saw the

tion, we affirm the judgment of the Court of Appeals.

CAMPBELL, J., not participating.

CLINTON, Judge, concurring.

As I understand its opinion, the majority essentially holds that an instruction on voluntary intoxication at the guilt or innocence phase of trial is not limited to cases in which temporary insanity is relied upon as a defense, but is appropriate any time the evidence raises an issue whether an accused was intoxicated at the time of the offense to the degree that it may have been a causal factor, and the evidence raises an issue whether his intoxication was voluntary. I agree.

Under V.T.C.A.Penal Code, § 8.04(a), voluntary intoxication is not a defense to crime. Under § 8.04(b), however, if intoxication causes a state of temporary insanity, and an offense is committed while in that state, such temporary insanity caused by intoxication, although not an excuse for commission of the crime, may be considered by the factfinder in mitigation of punishment. Now we come to subsection (c) of § 8.04, supra. This provision reads:

> "(c) When temporary insanity is relied upon as a defense and the evidence tends to show that such insanity was caused by intoxication, the court shall charge the jury in accordance with the provisions of this section."

Appellant contends it was error for the trial court to instruct the jury under § 8.04(a), that voluntary intoxication is not a defense, at the guilt phase of the trial, because she did not rely upon temporary insanity as a defense at that stage of trial. As I understand it, she contends that § 8.04(c) acts as a limitation, permitting a § 8.04(a) instruction to be given only when the defendant meets his burden of production to show the affirmative defense of insanity and there is also evidence from which the jury could conclude that his insanity was caused by voluntary intoxication.

The majority rejects this contention, and I think correctly so. In essence the majority holds that while a voluntary intoxication instruction is mandated under the circumstances described in subsection (c) of § 8.04, the submission of such an instruction is not *confined* to those circumstances. Indeed, Article 36.14, V.A.C.C.P., requires the trial court to charge the jury "distinctly" on every aspect of "the law applicable to the case[.]" That means, consistent with subsection (a) of § 8.04, that whenever the evidence raises an issue whether the accused was voluntarily intoxicated at the time he committed the offense, an instruction to the jury that his voluntary intoxication does not excuse his conduct would be appropriate, *irrespective* of whether the evidence suggests his level of intoxication was such as to have produced a state of temporary insanity. In short, § 8.04(c) was meant to limit the affirmative defense of insanity, and it does so on its face. It was *not also* meant to limit the State's entitlement to an instruction pursuant to § 8.04(a) that intoxication-less-than-insanity is not an excuse to crime.

With this brief amplification, I join the majority opinion.

---

defendant after the offense testified that she appeared high and a doctor diagnosed her as suffering from a drug overdose and pumped her stomach. *Id.* at 199–200. The court instructed the jury at guilt/innocence that neither voluntary intoxication nor temporary insanity caused by intoxication would constitute a defense. The defendant claimed the instruction was a comment on the weight of evidence and limited her defense because she was not asserting that her lack of knowledge was due to voluntary intoxication or temporary insanity caused by intoxication. *Id.* at 201. We held that since voluntary intoxication is not a defense, "when evidence came in which might have led the jury to believe that appellant was intoxicated at the time of the offense and this might have contributed to her defense of lack of knowledge of the offense," the instruction was properly given. *Id.* at 202. Where there was considerable evidence that the defendant was intoxicated and she asserted a lack of knowledge defense, the trial court properly instructed that voluntary intoxication is no defense. We noted that "the jury was free to find that appellant had no knowledge of the accident as long as they did not attribute that lack of knowledge to intoxication." Likewise here, the jury was free to find that appellant was insane as long as they did not attribute her insanity to voluntary intoxication.